John Meyer, MT Bar # 11206
Cottonwood Environmental Law Center
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149 | Phone
John@cottonwoodlaw.org

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, | Case No. DV- |
| Plaintiff, | |
| vs. | |
| RYAN ZINKE, in his official capacity as Secretary of the Interior; STEVE BULLOCK, in his official capacity as Governor of the State of Montana; MONTANA DEPARTMENT OF LIVESTOCK; MONTANA DEPARTMENT OF FISH, WILDLIFE AND PARKS; DAN WENK, in his official capacity as Park Superintendent, Yellowstone National Park; LEANNE MARTEN, in her official capacity as Regional Forester, U.S. Forest Service; NATIONAL PARK SERVICE; U.S. FOREST SERVICE; USDA-ANIMAL & PLANT HEALTH INSPECTION SERVICE | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Defendants. | |

## INTRODUCTION

1. More than 30 million bison roamed across the United States before European settlers arrived.

2. Native Americans relied on bison for their livelihoods.

3. Bison were integrally linked with the economic and spiritual lives of Native Americans through trade and sacred ceremonies.

4. Native Americans lived on the Western landscape based on a set of values ensuring the bison's survival by never taking more than was needed, never wasting what was taken, and making sure there was always abundance for future generations.

5. White settlers killed the bison to systematically destroy the cultural fabric of the Tribes.

6. By 1902, less than 50 bison remained in the wild.

7. The genocide forced Native Americans to submit to a foreign way of life and live on reservations.

8. Bison and Native Americans have quietly persisted for more than a century.

9. Today, Yellowstone bison number roughly five thousand.

10. In 2000, Defendants created the Interagency Bison Management Plan ("IBMP").

11. The stated goals of the IBMP are to maintain a viable, free-ranging bison herd that also prevents brucellosis transmission from bison to cattle.

12. Cattle originally carried brucellosis from Europe to the United States where it was transmitted to wildlife.

13. Brucellosis is a disease that causes cattle to abort fetuses.

14. The likelihood of transmission of brucellosis from bison to cattle is low: a cow would have to eat grass on which a buffalo calf was just born to be contaminated (transmission occurs with the ingestion of birthing fluids).

15. There has never been a documented case of bison transmitting brucellosis to cattle.

16. The IBMP has established different tolerance zones that limit when and where bison are allowed to roam outside of Yellowstone National Park.

17. The IBMP established "Zone 2" in the Gardiner area north of Yellowstone National Park.

18. Bison are never permitted outside of "Zone 2."

19. The best available science indicates that elk are carrying brucellosis in areas far outside "Zone 2" where bison are not permitted.

20. The IBMP allows Defendants to haze and harass bison that leave Yellowstone National Park with horses, 4 wheelers, and helicopters.

21. Female bison that are allowed to roam in to "Zone 2" must return to within park boundaries by May 1st each year.

22. Defendants are concerned for human safety due to the concentrated number of bison hunters in a small area north of Yellowstone National Park.

23. At lease one Native American Tribe has sent a Notice of Intent to hunt Yellowstone bison north of Yellowstone National Park this year since the IBMP was signed.

24. The new Notice of Intent to Hunt Yellowstone bison constitutes significant new information that requires supplemental NEPA analysis because even more bison

hunters will be concentrated in Yellowstone.

## JURISDICTION AND VENUE

25. This is a suit for declaratory and injunctive relief. Jurisdiction is proper under the Declaratory Judgment Act, 28 U.S.C. § 2201. Federal question jurisdiction exists under 28 U.S.C. § 1331.

26. Venue is proper in the United States District Court for the District of Montana pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district and because Plaintiff Cottonwood Environmental Law Center is a Bozeman-based organization. Venue is also proper under Rule 3.2 of the Local Rules of Procedure of the United States District Court for the District of Montana.

27. The federal government has waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

## PARTIES

28. Plaintiff Cottonwood Environmental Law Center is a conservation organization based in Bozeman, Montana. Cottonwood members have worked on Yellowstone bison restoration for years and have aesthetic, recreational, spiritual and conservation interests in Yellowstone bison.

29. Defendant Secretary of Interior Ryan Zinke is the federal official responsible for the proper administration of the National Park Service and is the principal officer of the United States responsible for upholding the federal fiduciary relationship over tribal and Indian resources.

30. Defendant Steve Bullock is the Governor of Montana.

31. Defendant Dan Wenk is the Superintendent of Yellowstone National Park. Yellowstone National Park is home to the roughly 5,000 bison which are the subject of the Interagency Bison Management Plan. Yellowstone National Park is a unit of the National Park Service. The National Park Service is a signatory of the Interagency Bison Management Plan.

32. Defendant Leanne Marten is the Regional Forester for Region 1 of the United States Forest Service. Region 1 is the Forest Service region that contains the area in question. The Forest Service is a signatory of the Interagency Bison Management Plan.

33. Defendant National Park Service is a component of the United States Department of Interior. The National Park Service is a signatory of the Interagency Bison Management Plan.

34. Defendant United States Forest Service is a component of the United States Department of Agriculture and is responsible for administering the nation's 154 National Forests and 20 National Grasslands. The Forest Service is a signatory of the Interagency Bison Management Plan.

35. Defendant Animal & Plant Health Inspection Service ("APHIS") is a component of the United States Department of Agriculture and is one of the agencies responsible for containing and reducing the Yellowstone bison population. APHIS is a signatory of the Interagency Bison Management Plan.

36. Defendant State of Montana Department of Livestock is one of the agencies responsible for containing and reducing the Yellowstone bison population. The Department of Livestock is a signatory of the Interagency Bison Management Plan.

37. Defendant State of Montana Department of Fish, Wildlife & Parks is one of

the agencies responsible for containing and reducing the Yellowstone bison population. Fish, Wildlife and Parks is a signatory of the Interagency Bison Management Plan.

## STATUTORY BACKGROUND

38. The National Environmental Policy Act is our "basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a).

39. "Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA." 40 C.F.R. § 1500.1(b).

40. An agency must supplement NEPA analyses where "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii).

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

41. Plaintiffs reallege and incorporate all prior allegations.

42. The Defendants have previously expressed concern for human safety due to the concentrated number of bison hunters outside of Yellowstone National Park.

43. The Blackfeet Tribe has sent a Notice of Intent to Hunt Yellowstone bison this year.

44. The new Notice on Intent to hunt Yellowstone bison constitutes significant new information that requires supplemental NEPA analysis because even more bison hunters will be concentrated in the small area north of Yellowstone.

45. Defendants have violated, and continue to violate, the National Environmental Policy Act by failing to determine whether to supplement the NEPA analysis for the Interagency Bison Management Plan based on the new tribal Notices of Intent to Hunt.

46. Defendants have violated, and continue to violate, the National Environmental Policy Act by failing to supplement the NEPA analysis for the Interagency Bison Management Plan based on the new tribal Notices of Intent to Hunt.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

   A.  Adjudge and declare that Defendants have violated the National Environmental Policy Act by failing to determine whether the NEPA analysis for the IBMP should be supplemented in light of the Notice of Intent to hunt from the Blackfeet Tribe that indicates they will be hunting Yellowstone bison this winter.

   B.  Adjudge and declare that Defendants have violated the National Environmental Policy Act by failing to supplement the NEPA analysis for the IBMP in light of the Notice that indicates there will be an increased number of Yellowstone bison hunters this winter.

   C.  Enjoin Defendants from enforcing the Zone 2 drop dead line or quarantining, hazing or otherwise harassing any bison in or near Yellowstone National Park until supplemental NEPA analysis for the IBMP is completed by Defendants.

   D. Issue any other temporary, preliminary, and/or permanent injunctive relief as may be specifically requested by Plaintiff.

   E. Award Plaintiff its reasonable attorney fees, costs, and litigation expenses, under the Equal Access to Justice Act, and/or any other applicable provision of law.

   F.  Grant such further and additional relief as the Court deems just and proper in order to remedy the violations of law alleged herein and to protect the interests of the Plaintiff.

Dated: February 8, 2018

Respectfully submitted,

/s/John Meyer
<u>JOHN MEYER</u>

*Attorney for Plaintiff*