John Meyer, MT Bar # 11206
Cottonwood Environmental Law Center
P.O. Box 412
Bozeman, MT 59771
(406) 546-0149 | Phone
John@cottonwoodlaw.org

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, <br><br> Plaintiff, <br> vs. <br><br> RYAN ZINKE, in his official capacity as Secretary of the Interior; STEVE BULLOCK, in his official capacity as Governor of the State of Montana; MONTANA DEPARTMENT OF LIVESTOCK; MONTANA DEPARTMENT OF FISH, WILDLIFE AND PARKS; DAN WENK, in his official capacity as Park Superintendent, Yellowstone National Park; LEANNE MARTEN, in her official capacity as Regional Forester, U.S. Forest Service; NATIONAL PARK SERVICE; U.S. FOREST SERVICE; USDA-ANIMAL & PLANT HEALTH INSPECTION SERVICE <br><br> Defendants. | 2:18-cv-00012-SEH <br><br><br> AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

1. More than 30 million bison roamed across the United States before European settlers arrived.

2. Native Americans relied on bison for their livelihoods.

3. Bison were integrally linked with the economic and spiritual lives of Native Americans through trade and sacred ceremonies.

4. Native Americans lived on the Western landscape based on a set of values ensuring the bison's survival by never taking more than was needed, never wasting what was taken, and making sure there was always abundance for future generations.

5. White settlers killed the bison to systematically destroy the cultural fabric of the Tribes.

6. By 1902, less than 50 bison remained in the wild.

7. The genocide forced Native Americans to submit to a foreign way of life and live on reservations.

8. Bison and Native Americans have quietly persisted for more than a century.

9. Today, Yellowstone bison number roughly five thousand.

10. In 2000, Defendants created the Interagency Bison Management Plan ("IBMP").

11. Two of the stated goals of the IBMP are to maintain a viable, free-ranging bison herd that also prevents brucellosis transmission from bison to cattle.

12. Brucellosis is a disease that causes cattle to abort fetuses.

13. Cattle originally carried brucellosis from Europe to the United States where it was transmitted to wildlife.

14. There has never been a documented case of bison transmitting brucellosis to cattle.

15. The IBMP has established different tolerance zones that limit when and where bison are allowed to roam outside of Yellowstone National Park.

16. The IBMP established "Zone 2" in the Gardiner area north of Yellowstone National Park.

17. Bison are never permitted outside of "Zone 2."

18. The best available science indicates that elk are carrying brucellosis in areas far outside "Zone 2" where bison are not permitted.

19. Female bison that are allowed to roam in to "Zone 2" must return to within park boundaries by May of each year.

20. The IBMP allows Defendants to haze and harass bison that leave Yellowstone National Park with horses, 4 wheelers, and helicopters.

21. The Defendants have stated they will not compromise the safety of the public because of hazing operations.

22. Cottonwood members use the Zone 2 area north of Gardiner.

23. The Defendants have expressed safety concerns for the public because they are unable to sweep areas before the hazing operations.

24. The Defendants have expressed concern for human safety due to the bison hunters shooting in such a small area north of Yellowstone.

25. The Defendants have stated that bison need to be allowed to roam in areas farther north of the Yellowstone National Park Boundary.

26. Secretary Zinke and Governor Bullock are allowing bison hunters to shoot

bison as soon as they come across the Yellowstone Park Boundary instead of listening to the other Defendants that say bison need to be allowed to move farther north.

27. Secretary Zinke and Governor Bullock have put the lives of hunters and the public at risk by not taking active measures to ensure more bison are distributed north of Yellowstone National Park so that hunting is not concentrated in a small area.

28. Secretary Zinke and Governor Bullock have the ability to ensure more bison are distributed north of Yellowstone National Park to ensure a safe hunt.

29. MT FWP and the National Park Service have previously expressed concern for the safety of bison hunters north of Yellowstone National Park. MT FWP has stated that the risk of injury or death because of the confined bison hunting is "real."

30. Native Americans want to see bison restored in areas north of Zone 2 to decrease hunting pressure and protect human life, increase the number of hunting opportunities for Native and non-Native Americans, and strengthen their spiritual connection to bison.

31.  Native Americans have expressed interest in asserting their treaty rights to hunt Yellowstone bison farther north of Zone 2.

32. New tribal hunting constitutes significant new information that requires supplemental NEPA analysis because more bison hunters will be concentrated in the small area north of Yellowstone National Park, thereby exacerbating the already real risk of death.

33. On December 26, 2017, the IBMP members issued a signed Memorandum that states:

> Hazing is used to manage the distribution of bison by preventing dispersal beyond Zone 2 boundaries.

> Hazing of bison will be minimized in areas where bison are tolerated outside Yellowstone National Park during the hunting seasons established by the treaty tribes and MFW.
>
> The safety of the public and personnel will be the primary consideration in any hazing operation; **at no time will the safety of the public or personnel be compromised.**
>
> Hazing actions in the northern management area are extremely dynamic and it is impossible to sweep the area to remove members of the public before operations commence.

December 26, 2017 IBMP Operating Procedures at 11, 14 (available at http://ibmp.info/Library/OpsPlans/2018_IBMP_Winter_Operations_Plan_FINAL.pdf) (emphasis added).

34. Other groups have previously challenged the failure to supplement the IBMP when new significant new information came to light. *Western Watersheds Project v. Salazar,* No. 9:00-cv-00159-CCL, 2012 WL 3756312 at *1  (9th Cir. August 30, 2012).

35. In that case, the Ninth Circuit Court of Appeals held that new information regarding brucellosis was not significant in part because the Final EIS for the IBMP anticipated that there would be changes to the bison habitat and considered how to prepare for such changes.  *Id.*

36. A study completed by the National Academy of Sciences in 2017 indicates that the brucellosis that is being spread to cattle in the Greater Yellowstone Area is traceable to elk, not bison.

37. The FEIS for the IBMP did not consider new management changes in light of the significant new 2017 study.

## JURISDICTION AND VENUE

38. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. §2201 (Declaratory Judgment Act), and 28 U.S.C.

§361(mandamus).

39. Venue is proper in the United States District Court for the District of Montana pursuant to 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district and because Plaintiff Cottonwood Environmental Law Center is a Bozeman-based organization. Venue is also proper under Rule 3.2 of the Local Rules of Procedure of the United States District Court for the District of Montana.

40. The federal government has waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

41. This Court has jurisdiction over the State Defendants because the claims arise from violations of federal law and because the State defendants have entered into a joint partnership for the management of bison pursuant to 40 C.F.R. § 1501.5. The joint partnership was entered into to "reduce the duplication of regulatory requirements." IBMP FEIS Volume I, Appendix C (page 706). According to the December 26, 2017 Winter Operating Procedures signed by the state Defendants, that IBMP members "expect to cooperatively support bison management activities such as hazing."

## PARTIES

42. Plaintiff Cottonwood Environmental Law Center is a conservation organization based in Bozeman, Montana. Cottonwood members have worked on Yellowstone bison restoration for years and have aesthetic, recreational, spiritual and conservation interests in Yellowstone bison.

43. Defendant Secretary of Interior Ryan Zinke is the federal official responsible for the proper administration of the National Park Service. The Secretary is a signatory of

the Interagency Bison Management Plan.

44. Defendant Steve Bullock is the Governor of Montana. The Governor of the State of Montana is a signatory of the Interagency Bison Management Plan.

45. Defendant Dan Wenk is the Superintendent of Yellowstone National Park. Yellowstone National Park is home to the roughly 5,000 bison which are the subject of the Interagency Bison Management Plan. Yellowstone National Park is a unit of the National Park Service. The National Park Service is a signatory of the Interagency Bison Management Plan.

46. Defendant Leanne Marten is the Regional Forester for Region 1 of the United States Forest Service. Region 1 is the Forest Service region that contains the area in question. The Forest Service is a signatory of the Interagency Bison Management Plan.

47. Defendant National Park Service is a component of the United States Department of Interior. The National Park Service is a signatory of the Interagency Bison Management Plan.

48. Defendant United States Forest Service is a component of the United States Department of Agriculture and is responsible for administering the nation's 154 National Forests and 20 National Grasslands. The Forest Service is a signatory of the Interagency Bison Management Plan.

49. Defendant Animal & Plant Health Inspection Service ("APHIS") is a component of the United States Department of Agriculture and is one of the agencies responsible for containing and reducing the Yellowstone bison population.  APHIS is a signatory of the Interagency Bison Management Plan.

50. Defendant State of Montana Department of Livestock is one of the agencies

responsible for containing and reducing the Yellowstone bison population. The Department of Livestock is a signatory of the Interagency Bison Management Plan.

51. Defendant State of Montana Department of Fish, Wildlife & Parks is one of the agencies responsible for containing and reducing the Yellowstone bison population. Fish, Wildlife and Parks is a signatory of the Interagency Bison Management Plan.

## STATUTORY BACKGROUND

52. The National Environmental Policy Act is our "basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a).

53. "Accurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA." 40 C.F.R. § 1500.1(b).

54. An agency must supplement NEPA analyses where "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii).

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

55. Plaintiffs reallege and incorporate all prior allegations.

56. The Defendants have previously expressed concern for human safety due to the concentrated number of bison hunters outside of Yellowstone National Park.

57. New Native American tribes have publically indicated their intentions of hunting Yellowstone buffalo this year.

58. New Yellowstone bison hunters constitutes significant new information that requires supplemental NEPA analysis.

59. Defendants have violated, and continue to violate, the National Environmental

Policy Act by failing to determine whether to supplement the NEPA analysis for the Interagency Bison Management Plan based on the new tribal hunting.

60. Defendants have violated, and continue to violate, the National Environmental Policy Act by failing to supplement the NEPA analysis for the Interagency Bison Management Plan based on the new tribal hunting.

## SECOND CAUSE OF ACTION

61. Plaintiffs reallege and incorporate all prior allegations.

62. The 2017 Operating Procedures state at no time will the safety of the public or personnel be compromised because of hazing operations.

63. Cottonwood members extensively use the northern management area for scientific, recreational, and spiritual purposes.

64. Hazing operations present safety concerns for Cottonwood members and the public.

65. Defendants have violated, and continue to violate, the National Environmental Policy Act by failing to determine whether to supplement the NEPA analysis for the Interagency Bison Management Plan based on the safety concerns for Cottonwood members and the public.

66. Defendants have violated, and continue to violate, the National Environmental Policy Act by failing to supplement the NEPA analysis for the Interagency Bison Management Plan based on the new safety concerns.

## THIRD CAUSE OF ACTION

67. Plaintiffs reallege and incorporate all prior allegations.

68. A study completed by the National Academy of Sciences in 2017 indicates

that the brucellosis that is being spread to cattle in the Greater Yellowstone Area is traceable to elk, not bison.

69. The FEIS for the IBMP did not consider how to prepare for management changes in light of the significant new 2017 study.

70. Defendants have violated, and continue to violate, the National Environmental Policy Act by failing to determine whether to supplement the NEPA analysis for the Interagency Bison Management Plan because the IBMP did not consider how to prepare for changes in light of the significant new 2017 study.

71. Defendants have violated, and continue to violate, the National Environmental Policy Act by failing to supplement the NEPA analysis for the Interagency Bison Management Plan because the IBMP did not consider how to prepare for changes in light of the significant new 2017 study.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

   A.  Adjudge and declare that Defendants have violated the National Environmental Policy Act by failing to determine whether the NEPA analysis for the IBMP should be supplemented in light of new Yellowstone bison tribal hunting this winter, safety concerns for Cottonwood members and the public because of the hazing, and the 2017 NAs study that indicates the FEIS for the IBMP did not consider how to prepare for changes.

   B.  Adjudge and declare that Defendants have violated the National Environmental Policy Act by failing to supplement the NEPA analysis for the IBMP in light of new information that indicates there will be an increased number of Yellowstone bison

hunters this winter, safety concerns for the public because of the hazing, and the 2017 NAs study that indicates the FEIS for the IBMP did not consider how to prepare for changes.

 C. Enjoin Defendants from enforcing the Zone 2 drop dead line or quarantining, hazing or otherwise harassing any bison in or near Yellowstone National Park until supplemental NEPA analysis for the IBMP is completed by Defendants.

 D. Issue any other temporary, preliminary, and/or permanent injunctive relief as may be specifically requested by Plaintiff.

 E. Award Plaintiff its reasonable attorney fees, costs, and litigation expenses, under the Equal Access to Justice Act, and/or any other applicable provision of law.

 F. Grant such further and additional relief as the Court deems just and proper in order to remedy the violations of law alleged herein and to protect the interests of the Plaintiff.

  Dated: February 20, 2018

  Respectfully submitted,

    /s/John Meyer
    JOHN MEYER

  *Attorney for Plaintiff*