UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER<br><br>    Plaintiff,<br>vs.<br><br><br>RYAN ZINKE, *et. al.*<br><br>    Defendants, | Civ. No. 18-12-BU-SEH<br><br><br><br>PLAINTIFF'S REPLY IN SUPPORT OF JURISDICTIONAL DISCOVERY |

# ARGUMENT

I. <u>The Requests for Admission from Governor Bullock are Relevant.</u>

Governor Bullock argues that "[b]ecause Cottonwood misstates the standard, the proposed discovery on Governor Bullock is not relevant, and futile." State Brf. at 3. According to Governor Bullock, "Cottonwood must show that the Governor of Montana is subject to 'federal control' when it comes to bison management." State Brf. at 3 (citing *Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1105 (9th Cir. 2007). Cottonwood disagrees.

The Ninth Circuit Court of Appeals has previously reviewed the applicability of NEPA to State Defendants regarding bison management in Montana. *Fund for Animals v. Lujan,* 962 F.2d 1391, 1397 (9th Cir. 1992). The *Fund for Animals* court "held that a nonfederal actor that receives federal financial assistance may be enjoined for failing to comply with NEPA." 962 F.2d 1391, 1397 (9th Cir. 1992) (citation omitted). When reviewing whether it had jurisdiction over the nonfederal actor, the court looked at whether the State of Montana received federal financial support or whether it had entered into a joint venture that involved the receipt of goods or services from a federal agency." *Id.* at 1398. Ultimately, the *Fund for Animals* court determined it did not have jurisdiction over the state defendants because the Plaintiffs were not able to demonstrate that the State

of Montana received federal support to hunt, kill, or otherwise manage bison.

Here, Cottonwood is requesting that Governor Bullock admit that the State of Montana has received federal assistance to haze, harass, or quarantine Yellowstone bison. Dkt. 65 at 2. This admission should give the Court jurisdiction over Governor Bullock for alleged NEPA violations under the *Fund for Animals* analysis.

Governor Bullock argues that even if he admitted that the State of Montana receives federal assistance to haze, harass, or quarantine Yellowstone bison, the Court does not have jurisdiction over him. Dkt. 70 at 4. Governor Bullock's argument hinges on the idea that a plaintiff must demonstrate that the federal government has "federal control" over a nonfederal actor to establish jurisdiction for a NEPA violation. Dkt. 70 at 4. The argument relies on a fundamental misunderstanding of the jurisprudence regarding jurisdiction over nonfederal actors for alleged NEPA violations.

In *Rattlesnake Coal. v. U.S. E.P.A.*, the Ninth Circuit held that the federal district court did not have jurisdiction over the EPA or the City of Missoula because there was no federal action that triggered NEPA. 509 F.3d 1095, 1101 (9th Cir. 1997). Instead, there was a state project that received no federal funds in its creation and minimal federal support in its

2

implementation. *Id.* In *Laub*, the Ninth Circuit held that because the plaintiffs did not contend that the federal government performed the challenged action, Plaintiffs' ability to bring a NEPA challenge against the State Defendants necessitated a finding that the challenged state program involved sufficient federal participation that it could be characterized as a "single federal action." *Laub v. U.S. Dept. of Interior*, 342 F.3d 1080, 1092 (9th Cir. 2003). That is not the case here.

Here, unlike *Laub*, Cottonwood is challenging the failure to supplement the NEPA analysis for a federal action. The operation of a bison quarantine facility is a federal action under the IBMP. *E.g.*, Dkt. 43 at 14. Cottonwood is not challenging a local or state plan like the Plaintiffs in *Rattlesnake* and *Laub*. Governor Bullock argues that "state actors may not be enjoined under NEPA simply because a state project involves major federal action." State Brf. at 3 (quoting *Fund for Animals*, 962 F.2d at 1397-98). Cottonwood is challenging the IBMP, not a state project. As such, Cottonwood seeks discovery to determine whether the State of Montana is receiving federal funding to help operate a federal facility that was approved under a federal action.[1]

---

[1] If the Federal Defendants pay for State of Montana employees to work at the federal buffalo quarantine facility, the Federal Government has control over the State in implementing the federal action.

The Ninth Circuit in *Fund for Animals v. Lujan* articulated the correct standard for obtaining jurisdiction over Governor Bullock in a challenge to a federal action. 962 F.2d 1391, 1397 (9th Cir. 1992). Courts should look at whether the nonfederal actor "receives federal financial assistance" or "enters into a partnership or joint venture whereby the federal government provides goods, services, or financing" to implement the federal activities— in this case the bison quarantine. *Id*. If the State of Montana, through Governor Bullock, is receiving federal support or has entered into an agreement with the Federal Government to implement the IBMP (operate the bison quarantine), this Court has jurisdiction over the Governor to enjoin him for NEPA violations. *Id*.

II. <u>Depositions are Appropriate.</u>

Federal Defendants claim that the four depositions that are being sought are "wholly inappropriate given the well-established rule that judicial review" of NEPA claims is limited to the Administrative Record. Dkt. 69 at 1. Federal Defendants have gotten ahead of themselves.

The Ninth Circuit allows plaintiffs to conduct jurisdictional discovery in NEPA cases where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is

necessary." *Laub,* 342 F.3d at 1093.[2] Here, there is a question of jurisdiction, as evidenced by Defendants' motions to dismiss for lack of jurisdiction. Dkt. 47-50.

Cottonwood's second amended complaint alleges the IBMP has a written goal of 3,000 bison. Dkt. 46 ¶73. In May 2018, the National Park Service presented 4,200 bison as the population objective for the Park. Dkt. 46 ¶73. Cottonwood's amended complaint alleges that Defendants violated NEPA by failing to determine whether to supplement the NEPA analysis for the IBMP in light of significant new information or circumstances that indicate the Park Service believes 4,200 can be a new population goal. Dkt. 46 ¶75.

The Tribal Intervenors' attorney argues that former Superintendent Wenk's statements that Yellowstone's bison population number can increase is not significant. Dkt. 68 at 8 ("This is not significant new information which requires supplementation under NEPA because these population numbers have been occurring since the IBMP was founded."). The merits

---

[2] While review of claims under APA section 706(2) are generally limited to the administrative record (*see Lands Council v. Powell*, 395 F.3d 1019, 1029-30 (9th Cir. 2005) (listing exceptions)), review of Plaintiffs' NEPA claims that Defendants failed to supplement NEPA are not limited to the record "because there is no final agency action to demarcate the limits of the record." *Friends of Clearwater v. Dombeck,* 222 F.3d 552, 560 (9th Cir. 2000) (citation omitted). Thus, if the Court denies Defendants' Motions to Dismiss, Cottonwood may seek additional discovery beyond the Requests for Admission and depositions being sought here.

argument is similar to the Federal Defendants' attorney's argument (Dkt. 48 at 21) and underscores why the Defendants' motions to dismiss should be denied or discovery should be permitted. The Ninth Circuit has clarified:

> If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible. The standard at this stage of the litigation is not that plaintiff's explanation must be true or even probable. The factual allegations of the complaint need only "plausibly suggest an entitlement to relief."

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (citation omitted).

Cottonwood's explanation that Defendants violated NEPA by failing to supplement or even consider whether to supplement the NEPA analysis for the IBMP because of former Superintendent Wenk's initial actions to raise the population number is not implausible. In response to Superintendent Wenk's statements, MT FWP's IBMP representative stated that raising the population number would require additional analysis. Dkt. 27 at 5. The factual allegations plausibly suggest an entitlement to relief and the motions to dismiss should be denied.

At the pleading stage, Rule 8(a) "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence to support the allegations." *Star v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011) (citation

omitted). Cottonwood seeks depositions to determine whether former Superintendent Wenk did in fact advocate for increasing the bison population and to discern any actions he may have taken to increase the population number. Cottonwood seeks to depose Secretary Zinke to discern any actions he may have taken to prevent former Superintendent Wenk from increasing the bison population.

Federal Defendants argue that the allegations in the complaint regarding former Superintendent Wenk's newspaper statements do not relate to any cause of action in the Second Amended Complaint. Feds.' Brf. at 10. Superintendent Wenk's statements relate to Cause of Action Number 4 in the Second Amended Complaint. Dkt. 46 ¶73. "As the Court wrote in *Twombly,* Rule 8(a) does not impose a probability requirement at the pleading stages; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence to support the allegations." *Starr*, 652 F.3d at 1217 (citation and internal quotation omitted). Cottonwood therefore seeks to depose Former Superintendent Wenk to determine his efforts to increase the bison population and Secretary Zinke's knowledge of Former Superintendent Wenk's efforts to increase the bison population.

III. Cottonwood has Article III Standing.

Tribal Intervenors argue that Cottonwood has "failed to demonstrate how the hazing of bison equates to an 'injury in fact.'" Dkt. 68 at 7.[3] When reviewing a Rule 12(b) motion to dismiss, courts "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (citation omitted). Cottonwood's second amended complaint alleges that "[h]azing operations present safety concerns for Cottonwood members and the public." Dkt. 46 ¶ 63. In addition, Cottonwood members have submitted declarations stating bison hazing and quarantine diminishes their opportunity to view the animals. *E.g.*, Dkt. 14-5 at 1 ¶ 10 (Knight Decl.) ("The hazing of bison is highly disruptive to my experience and enjoyment of the public

---

[3] In addition to claiming Cottonwood lacks Article III standing, Defendants also claim that Cottonwood lacks prudential standing. The U.S. Supreme Court has held there is "no doubt that 'recreational use and aesthetic enjoyment' are among the *sorts* of interests [NEPA was] specifically designed to protect." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 886 (1990) (emphasis in original). Thus, Cottonwood's lawsuit in which its members have alleged injury to their recreational use of the area to look for bison and aesthetic enjoyment of the area falls with NEPA's zone of interests and Cottonwood has prudential standing.

lands in the area"). [4] The Ninth Circuit Court of Appeals has already held that "the diminished opportunity of the [plaintiff's] members to view the northern bison herd in Yellowstone establishes standing to challenge the [Interagency] bison management plan." *Fund for Animals v. Lujan*, 962 F.2d 1391, 1396 (9th Cir. 1992).

Cottonwood has shown that its members suffer concrete injury-in-fact to their recreational, conservation, and aesthetic values that is tied to the State of Montana and Federal Defendants' hazing and quarantine of Yellowstone bison. Cottonwood's injuries may be redressed by supplemental NEPA analysis, which might reduce hazing and quarantine, transfer quarantined bison to Fort Peck, or allow more bison on the landscape for tribal members to hunt and Cottonwood members to enjoy.[5]

---

[4] The U.S. Supreme Court has held that a plaintiff does not need to provide specific facts in an affidavit or declaration regarding injury in fact until it responds to a motion for summary judgment. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Cottonwood is entitled to rest on the "mere allegations" in the complaint to support its claims that Defendants violated NEPA because Defendants did not wait until Summary Judgment to challenge Cottonwood's Article III standing. *Id*. Nonetheless, Cottonwood has submitted several declarations, the allegations of which must be taken as true at this stage of the litigation.

[5] Tribal Intervenors also try to argue that Cottonwood's injuries are not redressable because the Montana Department of Livestock is no longer a Defendant. Dkt. 68 at 7. The argument fails because Governor Bullock has indicated he has "statutory responsibility" to approve any hazing or hunting

Of course, Cottonwood does not have to show that the Defendants would come to a different decision regarding hazing, quarantine, hunting, or population numbers after completing supplemental NEPA analysis to satisfy the redressability prong of Article III standing. *Cottonwood Environmental Law Center v. U.S. Forest Service*, 789 F.3d 1075, 1079 (9th Cir. 2015) (*cert. denied*, 137 S. Ct. 293 (2016)) (citation omitted).

Tribal intervenors claim that because Cottonwood does not mention the National Academy of Sciences ("NAS") paper in its discovery request it has not "found" standing over the State and Federal Defendants. Dkt. 68 at 7. Cottonwood does not need to discover or find standing for its NAS claim—it has already established it. Cottonwood has submitted declarations that state if the Defendants prepared supplemental NEPA analysis they may decide "to immediately transfer quarantined bison to the Fort Peck Tribes in light of the new National Academy of Sciences paper that says elk are transmitting brucellosis far north of the area where bison are allowed to roam.") Dkt. 43 at 5 ¶ 28. (Catir Decl.)

---

plan. *See* Dkt 54-1 (letter from Governor Bullock to Montana DOL and FWP instructing them how to move forward with bison hazing).

## CONCLUSION

For these reasons, the Court should either allow Cottonwood to complete jurisdictional discovery or deny Defendants' Motions to Dismiss.

Respectfully submitted this 10th day of December, 2018.

/s/ John Meyer
JOHN MEYER
Cottonwood Environmental Law Center
P.O. Box 412 Bozeman, MT 59771
(406) 546-0149 | Phone
John@cottonwoodlaw.org

*Attorney for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(A), the attached brief is proportionately spaced, has a typeface of 14 points, and contains 2,390 words, excluding the caption, tables, and certificates of service and compliance.

/s/ John Meyer
JOHN MEYER
Cottonwood Envtl. Law Center
P.O. Box 412 Bozeman, MT 59771
(406) 546-0149 | Phone
John@Cottonwoodlaw.org

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 10th, 2018 I filed the Response to Defendants' Motions to dismiss attached via CM/ECF, which will send notification of such filing to all attorneys of record.

/s/ John Meyer
JOHN MEYER
Cottonwood Envtl. Law Center
P.O. Box 412 Bozeman, MT 59771
(406) 546-0149 | Phone
John@Cottonwoodlaw.org

*Attorney for Plaintiff*