## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| COTTONWOOD ENVIRONMENTAL LAW CENTER, | No. CV 18-12-BU-SEH |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| DAVID BERNHARDT, in his official capacity as Secretary of the Interior; STEVE BULLOCK, in his official capacity as Governor of the State of Montana; CAM SHOLLY, in his official capacity as Park Superintendent, Yellowstone National Park; LEANNE MARTEN, in her official capacity as Regional Forester, U.S. Forest Service; NATIONAL PARK SERVICE; U.S. FOREST SERVICE; USDA-ANIMAL & PLANT HEALTH INSPECTION SERVICE, | |
| Defendants. | |

## INTRODUCTION

Pending before the Court is Governor Bullock's ("Bullock") Combined

Rule 12 Motion to Dismiss Third Amended Complaint.[1] Plaintiff responded in

---

[1] Doc. 119.

opposition on May 4, 2020.[2] Bullock replied on May 8, 2020.[3] A hearing on the motion was held on June 8, 2020.

## PROCEDURAL HISTORY

On February 20, 2019, the Court issued a Memorandum and Order, which granted the Federal Defendants' renewed motion to dismiss, granted Bullock's renewed motion to dismiss, and dismissed the Second Amended Complaint with prejudice.[4] Plaintiff appealed.[5] On December 23, 2019, the Ninth Circuit issued a Memorandum, which affirmed in part, reversed in part, and remanded.[6]

The Ninth Circuit, in its Memorandum, determined that: (1) "[Plaintiff] has adequately alleged facts demonstrating Article III standing to pursue its claims against the federal defendants;"[7] (2) The Court on remand should determine "whether [Plaintiff] has alleged facts demonstrating Article III standing to pursue its NEPA claims against the State of Montana;"[8] (3) "Counts 1 and 3 of the second

---

[2] *See* Doc. 121.

[3] *See* Doc. 127.

[4] *See* Doc. 81 at 9–10.

[5] *See* Doc. 83.

[6] *See* Doc. 87 at 6.

[7] Doc. 87 at 2.

[8] Doc. 87 at 3.

amended complaint state a claim upon which relief can be granted;"[9] and (4) "Counts 2 and 4 do not state plausible claims for NEPA supplementation," however, "there could be facts that would support Counts 2 and 4."[10]

On remand, the Ninth Circuit instructed the "[Court] to allow [Plaintiff] an opportunity to seek leave to amend its complaint."[11] On March 3, 2020, Plaintiff, without leave to amend being sought or granted, filed a Third Amended Complaint for Declaratory and Injunctive Relief.[12] On May 1, 2020, Bullock moved to dismiss all claims in the Third Amended Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[13]

On June 12, 2020, Plaintiff filed a Motion for Leave to Conduct Additional Limited Jurisdictional Discovery and to Stay Governor Bullock's Motion to Dismiss.[14] Bullock responded in opposition on June 17, 2020.[15] Plaintiff replied on

---

[9] Doc. 87 at 3.

[10] Doc. 87 at 5.

[11] Doc. 87 at 6.

[12] Doc. 91.

[13] *See* Doc. 119 at 2.

[14] Doc. 146.

[15] *See* Doc. 149.

June 18, 2020.[16] The Federal Defendants responded in opposition on June 25,

2020.[17] On June 29, 2020, the Court denied Plaintiff's June 12, 2020, request to

conduct additional jurisdictional discovery and stay the Court's decision on

Bullock's motion to dismiss.[18]

## BACKGROUND

Grounds for Bullock's motion to dismiss are asserted as: "[Plaintiff] has

neither established this Court's jurisdiction over the Governor nor stated a claim

against the Governor for which relief can be granted."[19] Bullock maintains that

"[t]he inapplicability of NEPA to a nonfederal entity is a defect of subject-matter

jurisdiction that may be challenged under Federal Rule of Civil Procedure

12(b)(1);"[20] that "in most cases 'the federal government is the only proper

defendant in an action to compel compliance with NEPA;'"[21] and that "[i]t is only

in those rare instances where federal influence and control so pervade a project as

---

[16] *See* Doc. 150.

[17] *See* Doc. 152.

[18] *See* Doc. 153.

[19] Doc. 120 at 6–7.

[20] Doc. 120 at 13 (citing *Rattlesnake Coal. v. U.S. Envtl. Prot. Agency*, 509 F.3d 1095, 1105 (9th Cir. 2007)).

[21] Doc. 120 at 15 (quoting *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1091–92 (9th Cir. 2003)).

to 'federalize' the nonfederal party's actions that the nonfederal actor can be enjoined under NEPA."[22] Bullock also argues because the Interagency Bison Management Plan ("IBMP") does not subject him to federal control, he is not a proper defendant in this action.[23]

In response, Plaintiff asserts it "does not have to show federal control over Montana before this Court has jurisdiction to enjoin state management activities on federal land that implement the IBMP."[24] Rather, Plaintiff argues "the correct standard [is] whether the state and federal aspects of the IBMP are 'sufficiently interrelated' to subject the state of Montana to NEPA's requirements."[25] Plaintiff also maintains that the Court has jurisdiction over Bullock "because state and federal management activities that implement the IBMP are sufficiently interrelated."[26]

In reply, Bullock argues that Plaintiff's insistence "that the mere fact of state-federal cooperation is enough—without federal control—to extend the

---

[22] Doc. 120 at 15 (citing *Friends of the Earth, Inc. v. Coleman*, 518 F.2d 323, 329 (9th Cir. 1975)).

[23] *See* Doc. 120 at 16.

[24] Doc. 121 at 3–4.

[25] Doc. 121 at 4 (citing Doc. 47 at 3).

[26] Doc. 121 at 8.

provisions of NEPA to a non-consenting state governor" is contrary to Ninth Circuit precedent.[27] He further argues "that state and federal actions do not become 'sufficiently interrelated to constitute a single "federal action" for NEPA purposes'. . . unless that interrelationship gives rise to federal control over the state's actions to a material extent."[28]

## LEGAL STANDARD

### I.      Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted. "A Rule 12(b)(1) jurisdictional attack may be facial or factual."[29] Here, "Bullock has lodged a factual challenge to jurisdiction."[30] "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."[31]

/ / /

/ / /

---

[27] Doc. 127 at 2.

[28] Doc. 127 at 5–6 (quoting *Friends of the Earth*, 518 F.2d at 329).

[29] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

[30] Doc. 127 at 2.

[31] *Safe Air for Everyone*, 373 F.3d at 1039.

In a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."[32]

## II.     Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a [complaint]."[33] "To survive a [Rule 12(b)(6) motion], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[34] A facially plausible complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35] In considering the motion, a court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party."[36]

/ / /

/ / /

---

[32] *Safe Air for Everyone*, 373 F.3d at 1039 (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003)).

[33] *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[35] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[36] *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)).

However, a court is not "required to accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences."[37]

## DISCUSSION

"To trigger the application of NEPA, an action must be 'federal.'"[38]

Accordingly, "[n]onfederal defendants may be enjoined" to comply with NEPA "if

'federal and state projects are sufficiently interrelated to constitute a single

"federal action" for NEPA purposes,'"[39] such as where: (1) nonfederal defendants

receive federal financial assistance;[40] (2) nonfederal defendants receive federal

support in "goods, services, or financing;"[41] or (3) nonfederal defendants cannot

proceed with their proposed action without prior federal agency approval.[42]

"Federal decisionmakers must also retain 'power, authority, or control over' the

---

[37] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994)).

[38] *Rattlesnake Coal.*, 509 F.3d at 1101 (citing 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1508.18(a)).

[39] *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1397 (9th Cir. 1992) (quoting *Friends of the Earth*, 518 F.2d at 329).

[40] See *Fund for Animals*, 962 F.2d at 1397 (citing *Homeowners Emergency Life Prot. Comm. v. Lynn*, 541 F.2d 814, 818 (9th Cir. 1976)).

[41] *Fund for Animals*, 962 F.2d at 1397 (citing *Macht v. Skinner*, 916 F.2d 13, 20 (D.C. Cir. 1990); *Sierra Club v. Hodel*, 544 F.2d 1036, 1044 (9th Cir. 1976)).

[42] See *Fund for Animals*, 962 F.2d at 1397 (citing *Found. on Econ. Trends v. Heckler*, 756 F.2d 143, 155 (D.C. Cir. 1985)).

state project."[43] "[T]he federal agency must possess actual power to control the nonfederal activity."[44]

The "Memorandum of Understanding between the National Park Service and the State of Montana for the Bison Conservation Plan/EIS for Yellowstone National Park" clearly designates each party's respective roles and responsibilities.[45] The document provides:

> The NPS . . .
>
> 1.    As lead federal agency . . . shall be responsible for the scope and content of the NEPA portions of the EIS.
>     . . . .
> 7.    Exercise decision-making authority on the EIS . . . for NPS actions within the boundary of Yellowstone National Park in a manner that coordinates with activities proposed outside the boundaries of the park to the extent practicable.[46]
>
> The State of Montana will:
>
> 1.    As lead state agency, be responsible for ensuring compliance with all requirements of MEPA and shall be responsible for the scope and content of the MEPA portion of the EIS.

---

[43] *Rattlesnake Coal.*, 509 F.3d at 1101 (quoting *Ka Makani 'O Kohala Ohana Inc. v. Dep't of Water Supply*, 295 F.3d 955, 960–61 (9th Cir. 2002)).

[44] *Ka Makani 'O Kohala Ohana*, 295 F.3d at 961 (quoting *Village of Los Ranchos de Albuquerque v. Barnhart*, 906 F.2d 1477, 1482 (10th Cir. 1990)).

[45] *See* Doc. 121-7.

[46] Doc. 121-7 at 6–7.

. . . .

5.      Exercise decision-making authority on the EIS . . . for actions on lands in Montana outside the boundary of Yellowstone National Park for which the State has jurisdiction in a manner that coordinates with management inside the boundary of Yellowstone National Park to the extent practicable.

. . . .

It is understood that each Agency continues to exercise its respective jurisdictional authorities and that the cooperation extended in this MOU does not transfer any jurisdictional roles or responsibilities.[47]

"Appendix C: Memorandum of Understanding Among the National Park Service, State of Montana, U.S. Forest Service, and Animal and Plant Health Inspection Service" recites, in part: "The USFS, NPS, and the State of Montana bring special expertise to the development of this management plan. Each agency will bear its own cost for development of information directly related to its areas of expertise . . . ."[48]

The 2020 Operating Procedures for the IBMP states, *inter alia*:

The NPS has lead responsibility for implementing bison management actions inside the Park. MDOL has lead responsibility concerning disease issues in Montana, while MFWP has lead responsibility regarding public safety and property damage.

. . . .

---

[47] Doc. 121-7 at 7–8.

[48] Doc. 121-2 at 3.

> MFWP has primary responsibility regarding the
> public bison hunt, in cooperation with MDOL, as directed
> by state statute.
>
>     . . . .
>
> Various IBMP members conduct bison management
> activities such as hazing, capture, monitoring, quarantine,
> and research . . . [h]owever, each agency, tribe, or tribal
> organization does not provide support for every
> management operation. The level of participation and
> support by personnel in bison management actions as set
> forth in the IBMP remains subject to each IBMP member's
> supervision, jurisdiction, specific authority, and
> administrative oversight.
>
> Bison management operations occurring outside the Park
> will be under the direction of an on-site Operations Chief
> from MDOL . . . [t]he NPS will not participate in bison
> operations outside of the park unless an on-sight MDOL
> Operations Chief [] is present, except for life threatening
> emergencies or imminent bison-livestock comingling.
>
>     . . . .
>
> MDOL and MFWP maintain jurisdiction for
> management of bison outside Yellowstone National Park
> in Montana.
>
>     . . . .
>
> The NPS is the lead agency to implement hazing
> within Yellowstone National Park . . . MDOL is the lead
> agency to implement hazing outside of Yellowstone
> National Park in Montana with assistance from MFWP.[49]

The Third Amended Complaint recites, *inter alia*: "[T]he State of Montana

has entered into a joint partnership whereby the federal government provides it

---

[49] Doc. 121-4 at 4–6, 11.

with goods and services."[50] However, Plaintiff does not describe with specificity the alleged "goods and services" provided to the state. Bullock asserts in response that the only financial assistance the state of Montana receives in relation to the IBMP is the "sharing of costs associated with IBMP meetings and citizen outreach incidental to [ ] efforts, such as paying for meeting rooms or refreshments at a meeting"[51] and that "[s]eparate and apart from the IBMP, MDOL receives limited federal funding assistance for brucellosis control, including two federally funded MDOL employees . . . who engage in bison management activities among other duties."[52]

This Court concludes that state and federal management of Yellowstone bison is not "sufficiently interrelated to constitute a single federal action for NEPA purposes."[53] Stated differently, the state's management of Yellowstone bison "is sufficiently independent of federal control" to negate the requirements of NEPA.[54] It is clear that the Federal Defendants do not exert "power, authority, or control over" the state's management of bison outside of Yellowstone National Park, and

---

[50] Doc. 91 at 7.

[51] Doc. 120 at 11 (citation omitted).

[52] Doc. 120 at 11.

[53] *Laub*, 342 F.3d at 1092 (quoting *Fund for Animals*, 962 F.2d at 1391).

[54] *Laub*, 342 F.3d at 1083.

the limited federal funding the state may receive in relation to the IBMP does not render the state's bison management policies federalized under NEPA.[55] Therefore, Governor Bullock is not a proper defendant and must be dismissed.

ORDERED:

1.     Governor Bullock's Combined Rule 12 Motion to Dismiss Third Amended Complaint[56] is GRANTED.

2.     All claims asserted against Bullock in the Third Amended Complaint for Declaratory and Injunctive Relief[57] are DISMISSED WITH PREJUDICE.

3.     Bullock is DISMISSED.

DATED this 30ᵗʰ day of June, 2020.


_____

SAM E. HADDON
United States District Judge

_____

[55] *Rattlesnake Coal.*, 509 F.3d at 1101 (citing *Ka Makani 'O Kohala Ohana*, 295 F.3d at 961).

[56] Doc. 119.

[57] Doc. 91.